Stratton v. James Stone v. Poulos v. Stadler v. Craig v. Mann The District Court found that qualified immunity could not be granted or denied because a fact question existed as to whether Mr. Partlow threatened the officers with a gun. That's not the right analysis. What Mr. Partlow intended that evening is irrelevant to the qualified immunity determination. And we believe this constitutes a refusal or impermissible postponement of a ruling on qualified immunity as this Court discussed in the crime case. The notion that objective reasonableness hinges on whether a gun was pointed at the officers is contrary to the law of this circuit. Just a few of the things that we believe the Court should have analyzed instead of analyzing what Mr. Partlow was doing that evening. This is what the officers knew. It was about 2 a.m. in the morning. The officers knew that Mr. Partlow was intoxicated, that there was tension, significant tension going on, that he was suicidal. They know that he had expressed his intent to shoot if the police were called. They knew that he had a shotgun and they knew that it was loaded. They know he was intending to shoot the officers or shoot himself? I thought it was shoot himself. One of the officers overheard him tell his aunt that if you call the police, this gun will go off. So that issue was ambiguous, Your Honor. It's dark out, of course. The officers are huddled, quietly deciding what to do, how to get him on the phone so they could talk down this volatile situation. There's a lot of screaming going on between him and his aunt. They hear a loud noise and a man holding a weapon steps out of the building. He swings the weapon or engages in a movement with the weapon. They all drop the gun very quickly and then engaged. Now, let's stop right there in the analysis. That's the relevant analysis. What happened? What did the officers perceive and what did they see before they engaged? There's no disputed facts in anything that I've said whatsoever. This was all sworn testimony. We were in the somewhat unusual situation where we had a complete criminal transcript because Mr. Partlow was prosecuted for this incident and convicted of terrorizing. And so all of the players, anyone who was there to perceive what was going on that night, testified under oath in great detail. Also an interesting finding that the district court made is, and it is undisputed, that the officers did indeed perceive themselves to be in danger that evening. It's important to note that no one is saying that Mr. Partlow said, I surrender or threw his hands in the air or threw the gun down, anything like that. What we submit, Your Honor, is that society has to have a very small window of tolerance for whether a movement is furtive or innocent when you do what Mr. Partlow did that night. And society should have a very small window of restraint for its officers when a millisecond means the difference between life and death. Let me ask you, what relevance, if any, does the jury finding that answered the question that whether the plaintiff here had threatened the officers and they said no? Well, I would argue that it has very minimal relevance. I think that we can speculate as to what the jury was thinking there. But it's a different standard of proof, of course. It certainly doesn't have any preclusive effect on the district court. And it's our submission that what the district court should have done is looked at what the jury heard. And all of that evidence was before the district court. One speculation would be that the jury knew that that was going to be an enhancement and they figured that this young man had suffered enough. But certainly it doesn't have any preclusive effect and it's just a matter of an interesting note. Let me ask you this. At least in my mind, and you can correct me if you think I'm wrong, is it kind of boils down to the aunt that said he was putting the gun down when the officers shot. That's right. If there is a disputed issue. I don't think there's anything up to then that's really in dispute. That's right. And I read her testimony, and I don't remember exactly what it was now, but the testimony seemed to be, well, he was just setting the gun down on the ground. Whereas others said, including the officers, that he was chambering around and making movements that anybody that's familiar with guns would mean it's preparing to potentially shoot. But she says he was just setting the gun down. Isn't that an issue of fact for the jury? I mean, isn't that exactly why we have juries to decide which version would have it? And at this stage, don't we take her testimony as controlling at this stage for qualified immunity and say, okay, he was not chambering a gun. He was setting the gun on the ground. Now is there qualified immunity? Two issues there, Your Honor. First of all, you're right. The only fact dispute, if there is one, was seconds, portions of seconds before the officer was fired. And it was Lisa Partlow's testimony at trial that he was in the process of setting the gun down. Now, again, no one's arguing that he said, I surrender, that he threw his hands in the air. There was a movement. That's what the district court found. Lisa Partlow interpreted that movement as him setting the gun down. The officers interpreted that movement as potential danger to themselves. But is that a fact issue? No, because it's not material. That happened just milliseconds before the officers opened fire. Their perception was that it was a threatening movement that he was making. He had a loaded weapon. Well, I think at this stage you have to take the facts in favor of them. And the fact, if you do that, the fact is he was setting the gun down. Now, let's assume that he was truly setting the gun down. Did the officers have enough information that even misperceiving it that they could shoot? I think the worst that could be said, if in fact that's what he was doing, and I think if you listen to the tape, there probably wasn't enough time there for him to make any kind of movement. I don't disagree with it, but just take it in the best light for the plaintiff here. He was setting the gun down, as the aunt said. The worst case scenario, the worst that could be said of the officers, is then that they made a mistake and they perceived what he was doing wrongfully. And based on the circumstances of what happened here, that mistake was objectively reasonable. This court has said many times that officers' conduct in situations like this can't be viewed with 20-20 hindsight, that we understand that our police officers are faced with tense situations where split-second decisions mean the difference between life and death. The worst that could possibly be said here, if in fact there is a fact dispute on that issue, is that they made a reasonable mistake, as often officers do. This court has handled many cases where there was not even a weapon, but the officers believed there was. And that was enough to justify summary judgment on qualified immunity. Here we have a long gun loaded, ready to shoot. He's brandishing it. He made a movement. If they perceived, if he was intending to surrender, and they perceived that as something else, that was a reasonable mistake for them to make. Again, when you go out in public at 2 in the morning, yelling, making loud noises, intoxicated, and having expressed your suicidal ideation, there's a very small window there that society has to tolerate in movements before the police are allowed to defend themselves. The second issue with regard to Mrs. Partlow's testimony, and I know this gets into the jurisdiction issue, and I just want to make this one point. The court did say, this court did say in Jones, that the no reasonable juror analysis can be used in qualified immunity cases. And here, Lisa Partlow's testimony was not only contrary to all of the officers at the scene and everyone at the scene, but it was completely inconsistent with the statements that she gave to the BCI the evening of the incident, and it's inconsistent with the physical evidence. And we believe the court made an error there as well in not looking at the veracity of that testimony and whether or not a reasonable jury could believe it. Bottom line is that the refusal to rule on qualified immunity, which is what the district court did here, is in effect a denial of it, because it destroys all the purposes behind it, which is that these officers should not be faced with a trial in circumstances like what occurred on September 18th, 2011. I saved some time for rebuttal. Thank you. Thank you. Ms. Linbaugh, good morning. Good morning. You may proceed. May it please the court. Counsel. My name is Tatum Linbaugh, and I am representing Michael Partlow in this case, who is the appellee and the plaintiff in the underlying action. On September 18th, 2011, Michael Partlow went out with his aunt and got drunk. At some point in the night, he started feeling depressed and was low. On the way home, he had expressed some thoughts of suicide. Before his aunt and her boyfriend had even stopped the car, Michael jumped out of the car and ran into his apartment. His aunt was frantic. She chased him in. He locked the door. She was yelling at him. She was looking in the window. She saw he had a gun. She called the police. The police arrived minutes later. She ran into one of the police officers in the hallway. He didn't warn her to get out for her safety. He simply went outside and gathered with the other officers. The officers arrived in the dark at 2 o'clock in the morning. No sirens, no lights, no announcement to Mr. Partlow that they were, in fact, there. His aunt stayed in the hallway pleading with him that his uncle was on the phone, that his grandma was on the phone. And at some point, Mr. Partlow emerges. He walks out of the apartment with a gun in his hand. She hands him the cell phone. He walks out. The officers were to his right, about 30 feet away in the dark, in their dark uniforms, with no lights and no notification to him that they were there. He walks out the door with the cell phone. The gun was either pointed up or down, depending on which testimony you listened to, and they started screaming at him. The whole incident- The officers were screaming at him? Yes. The whole incident, if you listen to the record, which Judge Erickson did, was caught on audio, and it took a matter of seconds. The officers screamed at him, and one of two things happened. Either he wrapped around and aimed the gun at them, or he bent down to put the gun down, and they shot him. He was charged criminally, and a trial was had. And so all of the evidence reviewed by Judge Erickson in this case was sworn testimony of a trial, exhibits from the trial. The jury found him guilty of terrorizing. However, the allegation was terrorizing with a dangerous weapon, and so the jury had to make a special finding of whether or not Mr. Partlow intended- whether he inflicted or attempted to inflict harm or threaten with a weapon to the officers. The jury, on the underlying criminal action, found no, he did not. A lawsuit was subsequently filed, and summary judgment was filed by the defendants. The district court, in a very thorough opinion, denied summary judgment based on the two different stories. Now, if you read the district court's opinion, the court goes in detail, setting out the two-step analysis that we have to look at for qualified immunity, and going through the facts as we've all recited them here today. Essentially, everybody agrees exactly what happened until Mr. Partlow exits that apartment building. It was a matter of seconds. The officers will all testify that either the gun was up or the gun was down. Some of them testified he racked around. Some of them testified he didn't rack around. And then you have the evidence that the defendants would point to. There is a mark on the front of the gun that they say supports their position. Well, then we have the Partlow's testimony. Lisa Partlow testifies he was putting the gun down. We have Michael Partlow who testifies he doesn't remember. However, he does testify about his injuries, which I think are significant in this case, supporting our position. The officers are to his right. However, most of the bullet wounds are to his left back, which I think is consistent with him putting down the gun. So we have two completely different stories. The district court looks at this and says the issue that is very much disputed is whether or not there was a threat with the gun or whether or not there was compliance with the officer's request. How do you distinguish this from lock or, as counsel brought up, cases where the officers thought somebody had a weapon. They didn't even have a weapon. They were reaching in their pocket. In the lock case, Your Honor, it is very different in terms of a legal standard because we would submit that there is no jurisdiction for this appeal because of this factual dispute. If you look at the lock case, what the court did in that case was say, we all agree that this is what happened. In lock, the defendant was drunk. He was in his vehicle, and he was suicidal. At some point, he dropped his weapon, although no one communicated that to the officer. He gets out of the vehicle, starts walking towards the officer. The officer is yelling at him to stop. He keeps walking, and then at some point makes a movement. I'm not going to preempt the chief's authority, but you might want to speak into the microphone. Sorry. He makes a movement. The officer shoots him. At that point, the lock court granted summary judgment, saying, we all agree that this is what happened. And in that case, the court stated, this is okay because we all agree that he didn't have a gun, but the officer was reasonable in believing he had a gun and making a motion when the officer was telling him to stop, and he was walking towards the officer. In this case, there is a matter of seconds that go by. Mr. Partlow doesn't even know the officers are there, and either he is aiming at them or he's complying, which I think is more analogous to the Bell case that we cited in our brief, Bell versus the Kansas City Police Department, where this court found that the issue of whether or not the tasing was appropriate in that case depended on whether or not the plaintiff was doing something against the officer or complying with the officer's commands at that point. And so the lock case, summary judgment was granted on the lower court, and it was appealed, and it was affirmed. The Bell case, summary judgment was granted, and this court reversed it, saying the act of threatening the officer versus complying with the officer's demands is an issue that the jury needs to decide. And that is what we have in this case, Your Honors. We have a complete factual dispute. Well, I don't remember the details very well, Bell, but the Supreme Court has made it very clear that we're not supposed to make factual findings. But we still have cases where we say, okay, there are fact disputes, but if we take the facts exactly the way the plaintiff says they happened, is there qualified immunity? Is the officer's actions not a violation of the Constitution? So I guess the ultimate question is, taking the facts the way you describe them, and as the witness described them, did he turn to set the gun down? If that's actually what happened, are the officers still acting within their discretion or within their Constitution by firing? Because we have cases that say they do make mistakes, but can't hold them on those sudden, short terms like that of always making the right decision. So tell me, why is that a question that should be left to a jury? In this case, it should be left to a jury, Your Honor, because we have a man who was not making any motion towards these police officers in a matter of split . . . That's not the question. The question is what those reasonable officers, any reasonable officers, perceived. Is there any dispute as to the number of officers who were present? No. Is there any dispute as to how many officers fired their weapons? No, three fired one. Three fired, one did not. Okay, three fired, one did not. The three that fired were all rookies who had been on the force less than two years. The one that did not fire had been on the force. Do we speak in terms of a reasonable officer, do we not? Do we take their experience or lack thereof into consideration on qualified immunity? I believe that we look at this in terms of a reasonable officer, and I think that reasonableness cuts both ways. Is there any question, but they did shout at him. What did they shout? Officers, drop your weapon or what? When you listen to the audio, you can't understand any of it. It's very fast, and there's just a bunch of screaming. The officers all testified that they said different things, all yelling at the same time. Is there any question, but that they ordered him to drop that weapon? I believe there is a question of that based on the testimony. They were all yelling things at him. I believe that they did say, stop, drop your weapon. They were all yelling at the same time. A matter of seconds, he turns around to put it down, and they shot him in the back. Can you say it's not? It's so far beyond the realm of reasonable action on the part of an officer, young or old, to determine or put second minds, as it were, that he was making a threat towards them? Yes, Your Honor. No reasonable jury could find other than that they acted in callous disregard of his rights. I think that the jury at the criminal trial speaks to that. It has nothing to do with this case. That jury determined that he did not threaten the officers. The officers didn't know that at 2 in the morning. That is true, Your Honor. However, it depends on which view you take of it. Either the officers perceived that he was racking around, which some of them said he did and some of them said he didn't, and then you have the testimony that he was actually complying, which, based on the Bell case, the issue of threatening or complying with an officer's commands is an issue of fact for a jury. If he was, in fact, complying with their request that he put down the weapon, then it was unreasonable on their part to shoot him in cold blood, as it were. Exactly. And I think that we don't even get there in this case, Your Honors, because if you look at the Muhammad case and you look at the Jones case, the very issue that we have here is a factual dispute as to what happened if Mr. Partlow was threatening. How many relevant disputed facts exist that deprive us of jurisdiction to rule in this case? The genuine issue of material fact is whether or not he was threatening the officers with the gun or if he was complying with their commands at the time the shooting occurred. You're saying that the actions he made, he was complying with their request to put the guns down, and that was obvious enough that a reasonable officer should not have shot. That is correct, Your Honor, and I think it's substantiated by the fact that one of them didn't shoot. And I think that the Jones... That goes both ways. On the other hand, you'd have to say all three of them were unreasonable because three of them did shoot. And he was complying with their acts. If we look at the Jones case and the Muhammad case, this court cannot evaluate evidentiary sufficiency on the summary judgment qualified immunity level and that's exactly what they're trying to do, Your Honor. They're trying to cloak this as a legal issue. However, there's clearly a factual dispute. Judge Erickson went into detail as to why this fact were disputed. He said that all of the officers cited the threat with the gun, the actual racking of the round. Really, I don't think that's pertinent. What's pertinent is taking the facts the way you have one witness say them, which was he was turning and setting the gun down. Okay, forget about what all the dispute is. Was that enough that a reasonable officer in the dark of night at 2 in the morning with all this background of knowing that he had a gun and was drunk and threatened his own life, with that background, with a reasonable officer seeing him turn and start to bend over with a gun, was that officer acting unreasonably under the Constitution by shooting? Absolutely, Your Honor. I think if we look at the Bell case versus the Kansas City Police Department, that case was about tasing, but it was very factually similar in the fact that it was either a threat or compliance. And I think that it becomes objectively unreasonable for those officers to shoot Mr. Partlow on the left side of his back when he's bending away from them, putting down the weapon. Additionally, Your Honor, we have to look at the reasonableness of the officers. It was a matter of seconds, and they didn't, clearly, he wasn't making a motion towards them. He wasn't yelling threats at them. It was not disputed on any level that Mr. Partlow was threatening harm to any other human other than himself, and all of the officers agreed to this. They didn't give him a reasonable opportunity to surrender. They yelled conflicting commands at him while he was turning around trying to comply. They shot him in the back, and that's objectively unreasonable. What do you make of the district court's statement, perceiving themselves in danger, officers manned Craig and Stadler opened fire? Isn't that where the district court went wrong by not granting qualified immunity? Once he found that they perceived themselves in danger? I see my time has expired. May I answer your question? Go ahead and answer. I believe yes, because the district court, Judge Erickson, went into detail about how the objective reasonableness or unreasonableness of the officers' behavior turned. They were objectively unreasonable when they perceived themselves in danger. That's correct. Very well. Thank you. Thank you. Okay, thank you. Board, 35. Thank you, Your Honor. I'd first like to dispel the notion that Mr. Partlow was shot in the back. There is no evidence, there was no evidence at the criminal trial, no expert testimony about the trajectory of these bullets, except for someone from the crime lab testifying that there was an imprint from one of the officers' shotguns on the very tip of the chamber of the shotgun that Mr. Partlow was holding, which could have only gotten there if the shotgun had been pointed in the direction of the officers. But this shot him in the back thing, I had to clarify that issue. I disagree with the assertion that in the Locke case, everyone agreed with what happened. There were a lot of disputed facts in the Locke case, which is why the family brought suit. Locke's family all said that they told the officer numerous times that he had discarded his weapon and that he didn't have it anymore, and the officer still shot. Is that a disputed fact that's enough to defeat summary judgment? It certainly wasn't in that case. The Bell case, tasing is a little bit different when you're looking at the standard to be applied. As I recall, Mr. Bell did not have a weapon. It was a matter of whether he was complying with commands, and it's a little different when you've got a loaded gun in somebody's hands, and this puts a second decision making that needs to be made under those circumstances. My recollection of Bell was that the bottom line was you cannot use a taser to make somebody comply with your commands. No. I don't remember it being that applicable, this, but it's been a while since I looked at it. And I agree with that, Your Honor. The court's correct. We have to take the facts as the plaintiff describes them, but let's look at what those facts were and let's look at what the district court found. Again, the district court did not find that he was bending over to put the gun down. The district court stopped making factual findings when it said he made a movement. That's all that the district court found. And the district court found that the officers perceived that movement as potentially being a danger. Again, we're looking at a loaded shotgun here, and they knew it, and they knew that he was really, really intoxicated.  Did the officers know that this man had a loaded shotgun? Yes. And the reason they knew that is because Lisa Partlow's boyfriend went back to the back window of this apartment to his bedroom. Partlow was in there. The curtains were drawn. He saw shotgun shells on the bed. He informed the police officers of that. How did he do that? Yell out the window? No, no. Mark Michael, Lisa Partlow's boyfriend, then walked back to the front of the building and said there were shells on the bed. So they knew the gun was loaded. And, in fact, it was. There was one in the chamber. That gun was ready to fire with just a twitch of a finger. The most important finding that the district court made is, indeed, that the officers perceived themselves to be in danger. Now, if there were some, even semblance of evidence, that Mr. Partlow made a very clear movement towards surrendering or putting the gun down or pointing it in some safe direction, and there was time, this would be a different case. That evidence doesn't exist. We have one person's testimony that his movement was not threatening. The officers undisputably perceived it differently. At best, that can be called a mistake that is within the window that this court and the Supreme Court has created for qualified immunity. Chief, may I ask one more question? Sure. As you said at the outset, the district court heard in applying the law, stated more simply, where did Judge Fergson go wrong? Very careful judgment. What was his principal error of all? I think his principal error was focusing his analysis on what Partlow intended and what Partlow did as opposed to what the officers reasonably perceived based on what happened. Okay, thank you very much. Thank you. Thank you both for your arguments, your oral arguments in the briefs, and we will take it under advisement and be back in due course. Thank you.